COMPANIA MARITIMA SAMSOC LIMITADA, S. A. v. MORAN TOWING & TRANSP. CO., Inc.

UNITED STATES v. COMPANIA MARITIMA SAMSOC LIMITADA, S. A.

THE PRIMAVERA.

THE JULIA C. MORAN.

THE THOMAS E. MORAN.

THE CHESAPEAKE.
THE ORA ELLIS.

United States District Court
S. D. New York.
June 29, 1951.

---

1. No opinion for publication.

Herbert P. Reid, New York City, for libelant and cross respondent.

Burlingham, Veeder, Clark & Hupper, New York City, A. J. O'Kane, C. C. Tiffany, New York City, of counsel, for claimants-respondent, Moran Towing & Transp. Co.

Irving H. Saypol, U. S. Atty., New York City (Leo J. Curren, Charles A. Blocher, New York City, of counsel), for respondent and cross-libelant, United States.

WRIGHT, District Judge.

The issues of fact and law in the above entitled suit having duly come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, I now find and decide as follows:

Findings of Fact

1. At 7:44½ A.M. on April 15, 1946, the Panamanian steamship Primavera and the WSA steamship Ora Ellis collided in the Hudson River off Hoboken, New Jersey, both suffering damage. Compania Maritima Samsoc Limitada, owner of the Primavera, filed a libel against three tugs that were servicing the ship, the tugs' operator, Moran Towing & Transportation Co., Inc., and the United States as owner and operator of the Ora Ellis. The United States filed a cross-libel against the Primavera, the owner thereof, the three tugs and the Moran Company.

2. The weather was clear; it was practically high water with a tidal current of at least 1.2 knots though shown to be even stronger according to the Coast and Geodetic current chart and there was a southerly wind of 22 miles according to Weather Bureau records but somewhat less according to some mariners who testified.

3. The Ora Ellis, which had been anchored in the Hudson River off 125th Street, having checked navigational aids and equipment and synchronized the bridge and engine-room clocks, raised anchor and started south at 7:10, favoring the New Jersey side of midstream, to go to pier 57, North River to load; a harbor shifting pilot and the shipmaster were on the bridge with the third mate at the telegraph, a Quartermaster on the wheel and the other officers and seamen at their regular harbor maneuvering stations; the tug of which the pilot was master, the J. P. McAllister, was hanging on the port bow; full ahead was telegraphed to the engine room but in harbor, particularly on short runs, the engineer delivers less than the full sea speed of 11 knots; with the time required to build up to the set engine speed and heading into the tide and wind the maximum speed of the Ora Ellis was about 8 knots over the bottom.

4. The pilot and others on the Ora Ellis noted ahead a number of ships, some ascending and some descending the river and

a group of vessels anchored off the Bethlehem-Hoboken shipyard tailing up with the tide; at 7:39, the engines were slowed to half-ahead, reducing the speed to about 5 knots, and single whistle blasts exchanged with the South Bend Victory, which was about midstream and upbound for the Bethlehem shipyard; the positions and headings of the two vessels were such that they could have cleared safely port-to-port without the exchange of signals.

5. The Ora Ellis continued down and was passing the South Bend Victory roughly abreast the steamship Joshua Slocum, the southernmost of the vessels anchored some 500 to 700 feet off the Hoboken shipyard piers.

6. Meanwhile, at 7:30, the Primavera, formerly the Charles R. McCormick, had undocked from Pier 14 of the Bethlehem-Hoboken yard; she had just been renamed and transferred to Panamanian registry and the old name-boards were still displayed at the time of collision.

7. The new master had assumed command of the Primavera on April 11th, and the ship's crew with him consisted of only deck and engine room officers, a boatswain, cook and steward; the Primavera then lay at the south side of Pier 14, port side to the Pier and headed streamward, that is, easterly and from that position and heading was undocked on the morning of the collision.

8. On Saturday, April 13th, the Primavera's master had received instructions to move the ship to a Brooklyn pier on Monday, April 15th, and he secured a number of "riggers" to go along to handle lines and do other work aboard ship.

9. On the 15th, a Moran tug pilot went aboard the Primavera; he used three Moran tugs, one of them, the Thomas E. Moran, 1200 horse power, firmly made fast at the ship's starboard quarter to supply motive power, the other two, the Julia C. Moran, 400 horse power, and the Chesapeake, 350 horse power, ran headlines one forward, the other amidships on the Primavera; the engineer had supplied no steam to the main engines for some reason of which the shipmaster disclaimed knowl-

edge. After assisting in undocking the Primavera, the Chesapeake took her lines off the vessel and lay alongside the Thomas E. Moran.

10. At 7:30 the Primavera headed straight out according to her master, and thereafter was seen by licensed witnesses from other vessels in the vicinity having no connection with either of the colliding ships, to continue slowly down, athwart-stream, at roughly 45 degrees to the thread of the channel.

11. As the bow of the down-bound Ora Ellis was coming abreast the stern of the Joshua Slocum those on her bridge and the lookout and chief mate on the forecastle simultaneously saw the Primavera's bow emerge from beyond the Joshua Slocum moving slowly streamward across the latter's bow and the engines of the Ora Ellis were stopped and the alarm sounded; that was at 7:42½ but two minutes before the collision. No one was seen on the port side of the Primavera, including her bridge.

12. A half minute later, at 7:43, the engines of the Ora Ellis were rung half astern to arrest headway but, there being no signals from the Primavera or her tugs, at about the time the propellor started revolving, at 7:43½ the order was changed to full astern and the engines so continued until after the collision. Three short blasts were sounded by the Ora Ellis. No signals of any kind were made by the Primavera or her tugs.

13. The Primavera then some 600 or 700 feet ahead of the Ora Ellis, continued slowly toward midstream and at the same time sagging broad-side upstream with the wind and tide.

14. The reversing propellor caused the stern of the Ora Ellis to swing a little to port and the bow a few degrees to starboard and, as the Primavera continued sagging up, her port side, forward of the bridge, collided with the stem and starboard bow of the Ora Ellis at an angle variously estimated at forty to seventy degrees. At the moment of collision both vessels were making little, if any, headway. The Primavera was, however, drifting upstream with the tide and wind.

15. The collision was about 1 point off the Joshua Slocum's port bow and 450 to 500 feet away; the Joshua Slocum slacked away chain to evade the Primavera.

16. Neither the Primavera nor any of her accompanying tugs sounded any signal which might have called attention to their position in the stream; no tug was at the Primavera's port side to hold her against tide and wind in spite of the fact that the Chesapeake was obviously available for that purpose; she was displaying no signal indicating any lack of her own motive power, but had it been, time and distances were too short for such signal to have benefited the Ora Ellis in the situation confronting her. No lookout was maintained on the port hand of the Primavera for traffic coming down the river.

17. After the collision the Ora Ellis continued backing until about 50 feet away from the Primavera and then passed down streamward of the Primavera which by then had gained some sternway and passed up to starboard of the Joshua Slocum.

18. The Moran shifting pilot was at fault in failing to employ the tugs he was directing so as to have proper control of the Primavera and he was also negligent in failing to place a tug at the ship's port bow to hold her downstream out of the way of the other craft lawfully using the stream, and he was negligent as well in undertaking the maneuvers he did with inadequate tug power.

19. The Moran shifting pilot was further at fault in not maintaining a proper lookout on the port hand of the Primavera, in proceeding into the much travelled fairway of the river without first taking note of the traffic therein and conducting the navigation of his tugs and tow accordingly, and in failing to advise the Ora Ellis of his intentions and movements after the Ora Ellis had sounded the danger signal.

20. The fourth tug later sent by the Moran Company to augment the power of the other three in controlling the Primavera is an indication of the recognition of the inadequacy of the three tugs that were endeavoring to shift the Primavera at the time of the collision

21. The Ora Ellis was without fault for the collision; confronted with the emergency presented the conduct of those in control of the Ora Ellis and the avoiding maneuvers attempted were precautionary measures justifiably taken *in extremis.*

### Conclusions of Law

1. The libel of Compania Maritima Samsoc Limitada should be dismissed as to the United States of America with costs.

2. Moran Towing and Transportation Company and the Tugs Thomas E. Moran, Julia C. Moran and Chesapeake, are jointly and severally liable to the Compania Maritima Samsoc Limitada and to the United States of America for their damages, interest and costs resulting from the collision of April 15th, 1946 between the steamship Ora Ellis and the steamship Primavera.

Let decrees be prepared in accordance with these findings.